443 So.2d 473 (1984)
Dorothy DORAN and Mary Adams, Appellants/Cross-Appellees,
v.
Carol GAINER, Individually and As Personal Representative of the Estate of Holly E. Gainer, Appellee/Cross-Appellant.
No. 83-498.
District Court of Appeal of Florida, Fifth District.
January 12, 1984.
*474 Ronald W. Sikes of Welbaum, Zook, Jones & Williams, Orlando, for appellants/cross-appellees.
John M. Starling of Crofton, Holland, Starling, Harris & Severs, P.A., Titusville, for appellee/cross-appellant.
COBB, Judge.
This appeal concerns the disposition of joint savings accounts in two separate financial institutions, a federal savings and loan and a state bank.
*475 Carol Gainer was appointed personal representative of the estate of her father, Holly Gainer. Carol Gainer's sisters, appellants Dorothy Doran and Mary Adams, filed an objection to the amended inventory filed by Carol and a petition for determination of ownership of assets. Both motions claimed that certain certificates of deposit, money market funds and savings accounts held in the joint names of the decedent, Holly Gainer, and Carol Gainer, and not included in the inventory, were estate property, intended to be divided equally among the sisters pursuant to the residuary clause of Holly Gainer's will. The monies in controversy had been placed by Holly Gainer in two separate financial institutions, the Merritt Square Bank (Bank) and the First Federal Savings & Loan Association (Federal), with a total of some $55,000 in the former and some $45,000 in the latter.[1] Doran and Adams sought to have an amended inventory filed in the estate, and asked the court to require that the funds be turned over to the estate for distribution. Carol Gainer filed a response to the motions, claiming that the monies were held jointly with the right of survivorship and, as such, were not required to be part of the inventory or amended inventory.
Following a nonjury trial, the trial judge entered an order determining that although he found the intent of the decedent was to divide the money equally, only those monies in the Bank account were to become estate property, with the proceeds from the Federal accounts to remain with Carol Gainer. The trial judge based this decision on the distinction between the statutory provisions of section 658.56, Florida Statutes (1981), pertaining to banks, and section 665.063(1), Florida Statutes (1981), pertaining to savings and loan associations.
Doran and Adams filed a motion for rehearing, contending that the statutes violated their constitutional rights by denying them due process and equal protection of the law. The trial court denied the motion for rehearing and found that the statutory provisions did not violate any constitutional provision. In a motion for clarification, the appellants sought to clarify the trial court's order regarding the amount of interest Gainer was required to pay to the estate from the Merritt Square Bank account. The court granted the motion for clarification, and ordered that Gainer pay the total amount of interest actually earned on the account that she had to turn over to the estate. Doran and Adams timely filed a notice of appeal and Carol Gainer filed her notice of cross-appeal.
The appellants, Dorothy Doran and Mary Adams, contend the trial court erred in finding that the monies in the Federal, despite Holly Gainer's intent to the contrary, were to go solely to Carol Gainer. Two statutes are involved in the issues presented by this appeal  section 665.063(1), Florida Statutes (1981) (previously section 665.271), which applies to savings and loan associations, and section 658.56, Florida Statutes (1981) (previously section 659.291), which applies to banks. These provisions are as follows:
665.063 Additional accounts. 
(1) ACCOUNTS IN TWO OR MORE NAMES. 
(a) When a savings account, other than a convenience account, is held in any association or federal association in the names of two or more persons, whether minor or adult, in such form that the moneys in the account are payable to either or the survivor or survivors, then, in the absence of fraud or undue influence, such account and all additions thereto shall be the property of such persons as joint tenants. The opening of the account in such form shall, in the absence of fraud or undue influence, be conclusive evidence in any action or proceeding to which either the association or the survivor or survivors is a party of the intention of all of the parties to the account to vest title to such account and the additions thereto in such survivor or survivors. *476 The association shall not be subject to any liability for fraud or undue influence if it complies with the provisions of this paragraph. [Emphasis added.]
* * * * * *
658.56 Deposits and accounts in two or more names; presumption as to vesting on death. 
(1) Unless otherwise expressly provided in the signature contract card or other similar instrument delivered to and accepted by a bank in connection with the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons, whether minor or adult, payable to or on the order of one or more of them or the surviving account holder or holders, all such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest, and claim in, to, and in respect of such deposits and account and the additions threto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank, shall vest in the surviving account holder or holders.

(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest, and claims in, to, and in respect of such deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank against any one or more of such persons, shall, upon the death of any such person, vest in the surviving account holder or holders, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwitstanding that the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which except for the provisions of this section, would or might otherwise be void or voidable.
(3) Nothing herein contained shall abridge, impair, or affect the validity, effectiveness, or operation of any of the provisions of ss.658.55 and 674.405 or the rights of banks to make payments as therein provided. [Emphasis added.]
The trial court in the instant case determined that, while the presumption found in section 658.56 was overcome by the evidence adduced, such a finding was not material to the question of the Federal accounts, since the accounts were clearly held as a joint tenancy with right of survivorship, and neither fraud nor undue influence was alleged or proven. Doran and Adams contend on appeal that the statutes apply only to protect the Federal as against liability, with the intent of the settlor remaining the prime consideration. Gainer, on the other hand, argues that the statute clearly provides for survivorship rights and that the signature cards in this case clearly show a provision for survivorship.
Several Florida cases have addressed the issue of the impact of section 665.271, although none has expressly stated that the intent of the deceased is irrelevant. In Teasley v. Blankenberg, 298 So.2d 431 (Fla. 4th DCA 1974), the decedent and the defendant had two savings and loan accounts and a commercial bank checking account. Upon the decedent's death, the defendant withdrew the balance of the accounts, and the personal representative of the decedent's estate filed suit to recover. The trial court determined the funds to be the property of the defendant, and the Fourth District affirmed. The court noted that one of the savings and loan accounts was opened as a joint account with right of survivorship, but that the other was a joint account without any evidence that expressly provided for the right of survivorship. The court held that both accounts were governed by section 665.271, Florida Statutes (1971) (the predecessor to the current section 665.063[1]). The court rejected the appellant's argument that the statute would not apply to the account where there *477 was no evidence as to the right of survivorship, by finding that the account was under the savings and loan rules and regulations, thus falling within the statute. The court did not discuss any question of intent or rebuttable presumption in the savings and loan account, but did address that issue in regard to the bank account, finding that there was an absence of clear and convincing evidence to show a contrary intent to that of survivorship.
In Gentzel v. Estate of Buchanan, 419 So.2d 366 (Fla. 1st DCA 1982), review denied, 426 So.2d 26 (Fla. 1983), the appellant appealed from a trial court order determining that several savings accounts, including a savings and loan account, which were in her name and that of her father, were probatable assets that should pass under the will rather than to the appellant, the surviving account holder. The trial court determined that the joint accounts were really the property of the decedent, and that the decedent's intention was clearly shown by the evidence. The appellant contended that the trial court erred by failing to apply section 665.271 to the savings and loan account, and section 659.291 to the bank account. The First District disagreed and affirmed. The appellate court agreed that the presumption in section 659.291 was overcome by clear and convincing evidence, but concluded that section 665.271 did not apply to the case, since the signature card did not provide for right of survivorship, nor for "joint tenants." Thus, it was impossible to tell whether the parties intended a joint tenancy with right of survivorship, a tenancy in common, or a convenience account. The court distinguished the case from Teasley, since there was no evidence presented in Gentzel to show savings and loan rules and regulations which would automatically cause an account placed in two names to be a survivorship account. See also Fortman v. Freedom Federal Savings & Loan Assn. of Tampa, 403 So.2d 985 (Fla. 2d DCA 1980), review denied, 402 So.2d 609 (Fla. 1981), wherein the failure of parties to execute signature cards for a joint account was seen as precluding section 665.271 from applying, since no joint account with right of survivorship existed. That court noted, however, that section 665.271 appeared to create a mandatory, irrebutable presumption of the intent of the parties to create a right of survivorship. The court noted the difference in treatment between banks and federal savings and loans, and commented that the reason for the distinction was unclear.
In the instant case, the Federal account was clearly opened as a joint account with survivorship, as evidenced from the language on the signature card. Therefore, the instant case is closely analogous to Teasley in that proof of a survivorship account, aside from the statute, is present. The appellants contend, however, relying on Constance v. Constance, 366 So.2d 804 (Fla. 3d DCA), cert. denied, 376 So.2d 70 (Fla. 1979), and Drozinski v. Straub, 383 So.2d 301 (Fla. 2d DCA 1980), that the statute is meant to only protect the banking institution and is not meant to apply to disputes between the parties.
We note that neither Constance nor Drozinski involved survivorship rights, but rather dealt with transfers while both tenants of a joint account were still living. The appellants' statement that these two cases stand for the proposition that the statutes only protect the institutions is misplaced. Both cases hold that section 659.29 (currently 658.55) protects banks, and that is true, since that provision relates solely to the institution, with another provision, section 659.291 (currently 658.56) providing for survivorship rights. The fact that Constance refers additionally to 665.271 probably stems from the fact that this provision is applicable to both the institution and the individual, with no separate provision in the savings and loan provisions as is found in the banking code.
Section 665.063(1)(a) clearly holds that the establishment of a joint account with survivorship rights is conclusive evidence of the vesting of title in the survivor. Contrary to appellants' argument that the legislative intent reflected by section 665.063(1) *478 was only to protect savings and loan associations in paying accounts to a joint account survivor, the express language of the statute imposes the conclusive presumption in an action wherein a survivor is a party, even though the federal association is not. In the instant case, absent fraud or undue influence (which have neither been shown nor alleged here), title would pass to the surviving joint tenant, Carol Gainer, despite evidence of Holly Gainer's contrary intent  if the statute is valid in this respect. That is the question.
The appellants contend that section 665.063(1), Florida Statutes (1981), as applied in this case, violates their constitutional rights to due process and equal protection. Specifically, the appellants contend that, with no rational basis, the statute requires much more of those with accounts in savings and loans than those with accounts in banks governed by section 658.56, and that the unrebuttable presumption of section 665.063(1)(a) denies the ultimate beneficiaries of those accounts the right of due process. The appellee, Carol Gainer, counters that under the statutes, all those with assets in banks are treated alike and all those with assets in savings and loans are treated alike, which was a proper determination reached by the Florida Legislature. The appellee further contends that the appellants had no constitutionally protected property rights in the estate, but only a mere expectancy of inheritance. The trial court, in denying the motion for rehearing, agreed with the appellee and found that the statutes were constitutional, and further found that all of the depositors in savings and loan associations are treated equally, and that likewise, all depositors in banks are treated equally; therefore, the distinctions between the two sections did not violate the appellants' rights to due process and equal protection of the law.
It is here, as we see it, that the trial court's analysis is erroneous. The affected classes are not the depositors but, in this case, the testamentary beneficiaries. These beneficiaries receive variable treatment dependent solely upon the location (bank or savings association) of the testator's assets during his life, a fact irrelevant to the issue of the testator's intent and the proper disposition of those funds upon his death.
The only reasonable explanation for the distinction created by the statutes is legislative oversight. The provisions appear in different chapters of Florida Statutes and the predecessor statutes were initially adopted during separate legislative sessions  section 659.291 in 1971 and section 665.271 in 1969. Apparently, neither the legislature nor the courts heretofore have been called upon to correct this irrational distinction.
In Wiggins v. City of Jacksonville, 311 So.2d 406 (Fla. 1st DCA 1975), the court was presented with the statutory distinction between individuals holding master plumber's licenses in metropolitan Jacksonville. The City had adopted an ordinance which grandfathered in holders of the licenses issued by the City of Jacksonville Beach, while excluding those similarly situated in Atlantic Beach. Both beach cities had the same licensing standards. The court found the ordinance created an "unreasonable, arbitrary and capricious classification," and held it was unenforceable and unconstitutional. The following excerpts from the Wiggins decision are equally applicable here:
... A classification, to be upheld, must "have some just relation to, or reasonable basis in, essential differences of conditions and circumstances in reference to the subject regulated, and should not be merely arbitrary; and all similarly situated ... should be included in one class, at least where there are no practical differences that are sufficient to legally warrant a further or special classification in the interest of the general welfare." [Citation omitted.] ... [A]n ordinance, although nondiscriminatory on its face, may nevertheless be declared unconstitutional where its effect is to discriminate between persons in the same class. [Citation omitted.]
311 So.2d at 408.
The Florida Supreme Court, in Caldwell v. Mann, 157 Fla. 633, 26 So.2d 788 *479 (1946), applied the equal protection clause of the Fourteenth Amendment of the United States Constitution to a statute regulating the marketing of fish in certain counties. Restating the general rules applicable to the examination of a statute to assure equal protection, the court ruled that the burden imposed by the law upon one person must be imposed equally "upon others in a like situation." Differing classifications imposing different burdens are allowable only where a "just basis for the classifications or discriminations" exist. No such basis exists here.
Accordingly, we hold that section 665.063(1)(a), Florida Statutes (1981), is unconstitutional under the equal protection clauses of the United States and Florida Constitutions insofar as it purports to provide that the opening of a joint account payable to a survivor or survivors in a savings association is conclusive evidence in an action wherein a survivor is a party against third-party claimants or other survivors. We therefore reverse the trial court's award to Carol Gainer of all of the monies deposited in the Federal account by her father, Holly Gainer.
In regard to appellee's cross-appeal, we hold that there was ample evidence to sustain the trial court's finding that the intent of Holly Gainer was that his monies go equally to his three daughters. We agree with the cross-appellant, however, that the trial court erred by requiring her to pay the total amount of interest actually earned on the state bank account after Holly Gainer's death, rather than the statutory rate of interest. It is well established that assessment of interest on a debt (since money is fungible) must be made at the statutory rate where no specific rate was agreed upon by the parties. Lawyer's Surety Corp. v. Clarke, 413 So.2d 1260 (Fla. 5th DCA 1982).
AFFIRMED in part; REVERSED in part; and REMANDED for entry of judgment consistent with this opinion.
DAUKSCH J., and DIAMANTIS, Associate Judge, concur.
NOTES
[1] Carol Gainer testified at the trial that following Holly's death the monies were all taken out of the joint accounts and placed in a savings account solely in her name.