BOOTH, Judge.
This cause is before us on appeal from a judgment of conviction of possession of a firearm by a convicted felon entered on a plea of nolo contendere, specifically reserving the right to appeal the denial of motion to suppress certain physical evidence. The issues presented concern the authority of an auxiliary police officer to conduct a stop and frisk, to arrest and to perform other law enforcement functions.
The facts are that, during the early morning hours of February 17, 1981, a full-time deputy sheriff, Fedele, accompanied by an auxiliary law enforcement officer, Amy, and a deputy sheriff, Keefer, were summoned to the Speakeasy Lounge, a liquor lounge, to investigate an altercation. On arrival at the scene, the officers encountered the victim of the altercation, who told the officers that an individual had pointed a pistol at him during a physical altercation with other persons. At this point, a person in an automobile attempted to leave the scene, the victim identified that person as one of the assailants, and officer Fedele advised auxiliary officer Amy to continue interviewing the victim while he and officer Keefer stopped and interrogated the alleged assailant.
Shortly thereafter, while Fedele and Keefer were questioning the alleged assailant, a third party advised auxiliary officer Amy that one of the assailants was in the lounge. Officer Amy asked the victim to accompany him to the lounge for the purpose of identifying the second assailant. As they approached the entranceway of the lounge, they met appellant, leaving. The victim informed auxiliary officer Amy that appellant was the individual who had drawn the gun on him during the altercation. Amy immediately stopped appellant and inquired whether he was carrying a pistol. Appellant responded negatively and consented to a pat-down search, during which time the pistol was discovered. Officer Amy then arrested, handcuffed and brought appellant and the pistol to deputy sheriff Fedele.
Appellant contends that only a full-time law enforcement officer, as defined in Florida Statutes, Section 943.10(1), may conduct a stop and frisk and that an auxiliary officer is without authority to arrest and perform law enforcement functions except under the immediate supervision of the law enforcement officer with whom he is working.
Appellant’s contention that the statutory authority accorded to a “law enforcement officer” to conduct a “stop and frisk” pursuant to Section 901.151, Florida Statutes (1979), extends only to a “law enforcement officer” as defined in Section 943.10(1), Florida Statutes, is without merit. Section 943.10(1) defines a “law enforcement officer” as any person:
... employed full time by any municipality or the state or any political subdivision thereof, who is vested with authority to bear arms and make arrests, and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state.
A “part-time law enforcement officer” is defined in Section 943.10(5), Florida Statutes, as:
. . . any person employed . . . less than full time, . .. with or without compensation, who is vested with authority to bear arms and make arrests and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state.
Under appellant’s narrow interpretation of “law enforcement officer,” a part-time officer, as well as an auxiliary officer, would be excluded from conducting a “stop and frisk.” We decline the invitation to adopt such a strained interpretation.
An “auxiliary law enforcement officer” is defined in Section 943.10(6), Florida Statutes, as:
... any person employed ..., with or without compensation, who aids or assists a full-time or part-time law enforcement officer and who, while under the direct supervision of a full-time or part-time *881 law enforcement officer, has the authority to arrest and perform law-enforcement functions.
An auxiliary officer is accorded the authority, under described conditions, to arrest and perform law enforcement functions. Section 943.10(5), Florida Statutes, supra. The power to “stop and frisk” is undoubtedly a law enforcement function, and the power to arrest includes the lesser intrusive power to “stop and frisk.” Accordingly, we conclude that the term “law enforcement officer,” as used in Section 901.151, includes an auxiliary officer.
The authority of an auxiliary officer, however, is not without limits. See Section 943.10(5), Florida Statutes, supra. Also, the Florida Administrative Code, Section 11B-10.01(1), provides that a person functions as an auxiliary officer when he is “in the company and under the direct control of a certified police officer” while conducting patrol operations for the purpose of detection, prevention and suppression of crime.
In the instant case, the auxiliary officer was working with certified law enforcement officers who were in the immediate vicinity, but the auxiliary officer was not visible to his control officer at the time he made the stop and frisk and arrest. Appellant contends that this is insufficient, relying on the decision in Piperato v. Zuelch, 395 So.2d 1231 (Fla. 3d DCA 1981), wherein the court held that a statute prohibiting a person from tatooing the body of any human being, unless the tatooing was performed “by a person under the direction” of one licensed to practice medicine or dentistry, was to be construed as requiring that the supervisor have personal contact with the person being tatooed. We agree with the interpretation of the language of the statute governing tatooing in the Piperato case. However, the rationale of direct contact in the circumstances of the business being regulated in that case does not apply to law enforcement officers in the everyday exercise of their duties.
The legislature obviously intended auxiliary law enforcement officers to provide full and part-time law enforcement officers with material assistance. It was assured that the auxiliary officers would function in a subsidiary capacity by requiring that they exercise their arrest authority and perform law enforcement functions only while “under the direct supervision” of a full or part-time law enforcement officer.
Given the exigencies inherent in the law enforcement profession, we conclude that the requirement that auxiliary officers function while “under the direct supervision” or “in the company and under the direct control of” a full or part-time law enforcement officer is met as long as the auxiliary officer is directly accountable to a full or part-time law enforcement officer who is in the immediate vicinity of the scene and who has ultimate control of the situation. The degree of supervisory control necessary would be dependent upon the exigencies created by the circumstances.
In the instant case, the nature of the victim’s accusation against appellant created the need for immediate action, and officer Amy responded to that need diligently and within the scope of his authority.
Accordingly, the order of the trial court is affirmed.
SHIVERS and JOANOS, JJ., concur.